UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

COMPLAINT

3:19-cv-775-RGJ

**PLAINTIFF**; Joseph Hicks          VS.          **DEFENDANTS**; Mark Begor, Equifax Information Services, LLC

**JURISDICTION**; Western District of Kentucky, under Diversity, Defendants operate out of Georgia, and in every State, Plaintiff is a resident of the Western District.

**TYPE OF ACTION**; Intentional Tort, Fraud by Misrepresentation, Tampering and Spoliation

**CAUSE OF ACTION**; Fraud, Remedies for Fraud, KRS 355.2-721, Federal Rules of Evidence, Spoliation

**STATUTE OF LIMITATION**; 5 Years, KRS 413.120(12)  (Claims begin June of 2015)

**CLAIM #1.) Fraud by Misrepresentation**; Defendants obtained personal identification information and documents from the Plaintiff, by making false statements via the internet and the United States Mail, (Wire and Mail Fraud). All in an effort to deceive the Plaintiff, and to obtain documents that were not needed at all by the Defendants, rather were obtained with the intentions of sale for profit in the future. And in the process, Defendants caused injury and harm to the Plaintiff. Defendants failed to shred or destroy, or even protect said documents, and lost control of all documents.

**CLAIM #2.) Fraud by Misrepresentation**; Defendants thought up and prepared as intentionally false credit report concerning the Plaintiff, and knowingly misrepresented the truth, and did so for profit in the sale of said report. And in doing so caused injury and harm to the Plaintiff. Defendants used the internet to complete their fraudulent action. The four false statements placed on the report by Defendants are not related to any creditor, or supplier of information to the Defendants, rather these four false statements were added to the report by the Defendants based on no facts, proof or truth. This claim is not made under the FCRA.

**CLAIM #3.) Fraud on the Court; Spoliation; Tampering**; Defendants violated the Rules of Evidence and Rules of Discovery, by both destroying intrinsic evidence, and tampering with and forging documents concerning intrinsic evidence, entered in a case under Discovery Rules. All done in an effort to deceive the Court and the Plaintiff, and to impede prosecution and impede discovery of the truth.

**PLAINTIFF SEEKS**; Trial by Jury

**PLAINTIFF SEEKS RELIEF**; Written Demand for Relief

Respectfully submitted,

Joseph Hicks, Plaintiff, pro se
P.O. Box 66, Fisherville, KY 40023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Plaintiff; Hicks            vs.            Defendants; Begor, Equifax Information Services, LLC

**COMPLAINT**

**Fraud in Obtaining Documents**

Equifax repeatedly refused to honor 15USC 1681g(a) requests made by Plaintiff, In June of 2015, Plaintiff via internet, (under 1681g) asked for a copy of his own credit report. Plaintiff was informed that he had "failed" a security test given online, and must send proof of identity and address in order to obtain his report. Plaintiff sent Equifax a copy of his drivers' license and Social Security Card (which included his mailing address) along with letter exhibit A, which shows the request for report under 1681g, and Plaintiffs' dispute concerning the "security questions" given to him online.

Plaintiff received response letter exhibit B, which states Equifax needed more proof of the Plaintiffs' mailing address, before they would send the credit report. Letter exhibit B is a written lie, sent thru the U.S. Mail. Exhibit E3 is the frozen database scan of the Plaintiffs' July credit file given to Plaintiff in November of 2017 during the discovery phase of prior case. E3 shows the mailing address of the Plaintiff was on file already.

At the time, July 2015, Plaintiff had to rely on Equifax to tell the truth as to what path was needed to be taken for the Plaintiff to obtain his own credit report. Plaintiff sent a second letter exhibit C, and sent additional proof of mailing address (a Farm Bureau Insurance document with mailing address). Equifax responded with letter exhibit D, which itself is a lie and a fraud. Plaintiff never received a copy of his credit report under 1681g(a) or 1681i (dispute).

Equifax sent a false and fraudulent credit report to Cabelas Bank in February of 2017, after the Plaintiff applied for a credit card from Cabelas. Plaintiff received a letter exhibit F, a denial letter, which states clearly the information used to determine such a denial was obtained from Equifax. Plaintiff realized that Equifax had never cleared up the problems mentioned in the July 2015 attempt to see his report.

Equifax repeatedly refused to give the Plaintiff a copy of his February 2017 credit report, and the Plaintiff had to obtain that copy by subpoena, and that credit report was obtained November 13, 2018. That February 2017 report is exhibit J, and is accompanied by a declaration. Exhibit J shows the four false statements were added to the report by Equifax prior to selling it to Cableas.

In April of 2017 the Plaintiff filed suit against Equifax, and the Plaintiff used P.O. Box 66, Fisherville, Ky. 40023 as his address in the Complaint. In May of 2017 the Plaintiff received an unsolicited letter exhibit P, from Equifax, this letter explains how the Plaintiff may go about obtaining a copy of the February 2017 report. Plaintiff followed instructions again, and under those instructions and 1681g(a), the Plaintiff sent letter exhibit Q making that request official. Plaintiff received reply letter exhibit R, which is a written lie, sent thru the U.S. Mail, claiming Equifax needed more proof of Box 66 as address. Plaintiff sent a second request in letter exhibit U, to which there was no reply.

Letter exhibit P is dated May 17, 2017 and is addressed to, and was sent to P.O. Box 66, Fisherville, Ky. 40023. Letter exhibit R is a lie. The Plaintiff had relied on Equifax to tell the truth as to how the Plaintiff could obtain his own credit report. By this time Equifax has gained seven documents of the Plaintiffs, all listed in attached Affidavit. All documents were sent in futile attempts to obtain credit reports. Such documents used for "proof", should have been shredded, destroyed or encrypted, they were not, due to the fact that Equifax sells such Identification Documents, along with all else that does not belong to them, in their greed centered operation. Equifax only plan was to lie to obtain whatever they wanted. And then Equifax lost all documents in the Breach of 2017, which they tried to hide from the public.

   Equifax sells this personal information to anyone who will pay, and having seven such documents, all unredacted and in plaintext form, was their goal from the beginning.  Keeping such documents is a violation of the Safeguards Rule, as all such proof documents should have been shredded and destroyed.  And any documents that are kept should have been encrypted.  Equifax did neither, for they wanted to sell the documents and all that matters is profit, (and they did this to 180,000 citizens).

   At the time Equifax sent letter exhibit P, they were experiencing the beginning of the Breach of 2017, the Breach which they hid from the public until September of 2017.  Equifax lost all of the Plaintiffs' seven identity documents in their failure of security, and their Breach of 2017.  Plaintiff cites the sworn testimony of then C.E.O. Richard Smith, before Congress in September of 2017, exhibit S, in which Mr. Smith admits Equifax lost all documents concerned with the "dispute portal" and those consumers, and all was in plaintext form.

   Those seven documents are gone, lost, and in the hands of the bad guys, thanks to the greed and laziness, and lies of Equifax and its' Board of Directors and C.E.O.   In August of 2016, Equifax scored a zero on their cybersecurity test, which was required by N.Y. Stock Exchange.  In response to failing said test, Equifax gave their C.E.O. 60 million dollars in bonus, and the Board of Directors all voted themselves a pay raise, and bonus.  In response to the Breach of 2017, Mr. Smith received 90 million dollars as a "reward" for doing so well.  And of course the Board of Directors followed up with their own bonuses.

   In his testimony to Congress in September 2017, Mr. Smith bragged that Equifax had spent 70 million dollars on "security" in the year 2017.  Equifax has 800 million or more names on file in their system, 70 million dollars amounts to  8 cents per person spent on security.

   From the Plaintiffs first attempt to obtain his credit report in June of 2015, two more letter attempts in July of 2015, thru the attempts to obtain a copy of his credit report in May of 2017, two more letter attempts, the Plaintiff was lied to on each and every occasion , by wire and by mail, by Equifax, in a greedy attempt to make a profit off the identity documents of the Plaintiff, all while violating the law.

   Kentucky Law recognizes the tort of fraudulent misrepresentation, the six elements; 1). The defendant must have made a material misrepresentation.  2). that was false.  3). that defendant knew was false, or made with reckless disregard for its truth.  4). that was intended to induce the plaintiff to act, based on the misrepresentation.  5). that the plaintiff reasonably relied; and  6). that caused the plaintiff injury.

   The Defendants words and letters to the Plaintiff were all lies, every letter, every word. Equifax own documents exhibit E3 shows they knew the Plaintiff address in 2015.  In 2017, after being served a Complaint with the Plaintiffs mailing address listed, and after sending the Plaintiff letter exhibit P, which was addressed to, and sent to, P.O. Box 66, Fisherville, Ky. 40023, Equifax mails letter exhibit R, another lie sent thru the U. S. Mail.  The Plaintiff needed a copy of his credit reports to solve all the existing problems he had at the time.  The Plaintiff had to rely on Equifax to try to obtain his own credit reports.  And now as result of their lies and misrepresentation, they obtained by Fraud, and lost, the seven documents belonging to the Plaintiff.

   It is bad enough that Equifax profits from the sale of personal identity information of citizens, without their consent, or knowledge.  They are no different than a common thief selling goods that do not belong to them.  The Plaintiffs Identity does not belong to Equifax and is not theirs to play with for profit.

   Had Equifax been honest from the start, Plaintiff would have not lost a single document, and Plaintiff would have received his credit card from Cabelas in February of 2017.  Equifax greed caused all the problems.

**KNOWN FACTS;**

1. Plaintiff had not applied for, or obtained, any type of loan or credit from 2005 thru January 1, 2017.
2. In October 2014, the Plaintiff sought and obtained his Trans Union and Experian credit reports, thru the FTC's "Annualcreditreport.com online offer.
3. In June of 2015, Plaintiff used the same online method to try to obtain his Equifax credit report.
4. The June 2015 attempt was denied by Equifax, based on Plaintiffs' answers to "security questions", (A). "Who holds your home mortgage opened in 2013?" (B). " What is the amount of your monthly mortgage payment?" (C). "Who holds your retail credit card opened in 2009?" Plaintiff had no mortgage, no mortgage payment, and no retail (or any) credit card, and answered accordingly.
5. Equifax demanded proof of address and identity be sent by mail to Equifax, in order for the Plaintiff to obtain his report.
6. Plaintiff sent letter exhibit A, with proof of address and identity, under 15USC 1681g(a), and disputing any accounts mentioned in security questions.
7. Plaintiff received letter reply, exhibit B, which is a lie sent thru U.S. Mail, concerning P.O. Box 66.
8. Exhibit E3, frozen database scan of Plaintiffs' July 2015 credit report, obtained thru discovery in November 2017, shows Equifax had the mailing address of P.O. Box 66 on file.
9. Plaintiff sent letter exhibit C, again with more address information, again under 1681g(a) and again disputing any accounts on file.
10. Plaintiff received letter reply exhibit D, unexplainable and not understandable as to the meaning of the letter.
11. Plaintiff never received any credit report for June or July of 2015.
12. On or around the first of January 2017, Plaintiff applied for a credit card from Kroger/Visa thru U.S. Bank. Seven days later the Plaintiff received a credit card with $3,000.00 credit limit, credit information for that application was obtained thru Experian.
13. On or around February 19, 2017, Plaintiff applied for a credit card from Cabelas Bank, Cabelas sent the Plaintiff a letter of denial, exhibit F, stating the reasons for denial and that they obtained information to make this decision from Equifax. The four false statements are listed on this letter.
14. On April 21, 2017, Plaintiff filed suit against Equifax and Smith (C.E.O.), that summons was served May 5, 2017.
15. On or around May 17, 2017, Plaintiff received an unsolicited letter from Equifax, exhibit P, in which Equifax explains how the Plaintiff can obtain his February 2017 report, which was used in the adverse action of Cabelas. This letter was addressed to, and mailed to P.O. Box 66, Fisherville, Ky. 40023.
16. Plaintiff send "notarized" request, under instructions, and under 1681g(a), with identification and proof of address documents, that letter is exhibit Q.
17. On or around June 22, 2017, Plaintiff receives reply letter exhibit R, which makes the false claim that Equifax cannot verify the mailing address of P.O. Box 66, Fisherville, Ky. 40023. Exhibit R is a lie sent thru the U.S. Mail.
18. Plaintiff again sent notarized request for February 2017 credit report, letter exhibit U, this time Plaintiff gives Equifax option of where to mail credit report.
19. Plaintiff got no reply from sending letter Q.
20. Plaintiff never received any credit reports for the February thru April period of 2017.
21. Equifax hid the ongoing Breach from the Plaintiff beginning in May of 2017, until it was announced to the public in September of 2017.
22. Richard Smiths' Testimony to the U.S. Congress in September of 2017, states that Equifax lost the documents concerned with the dispute portal of Equifax files. Those are the documents the Plaintiff sent to Equifax in July 2015, and May and June of 2017, in an attempt to dispute and obtain his own credit report. Those documents are listed in "Affidavit" exhibit G.

23. At Rule 16 Hearing on August 31, 2017, Plaintiff requested three credit reports from Equifax, July 2015, February 2017, and April 2017, the Court instructed Equifax to supply these to the Plaintiff.
24. After waiting three months, Equifax informed the Plaintiff, those reports had been destroyed, And the only records they had were "frozen database scans" which are miniaturized editions of said reports, and in November-December of 2017, Plaintiff received these "scans" for July 2015, February 2017, and April 2017.
25. The July 2015 "scan" (exhibit E3) has P.O. Box 66, Fisherville, Ky 40023 listed as the Plaintiffs' current address.
26. The February "scan" (exhibit E) has the four false statements removed, and thus is a forgery, and not an accurate record of the Plaintiffs' report as it was sent to Cabelas.
27. Plaintiff sent Equifax "Request for Production of Documents" and Equifax maintained they did not have the actual credit reports, only these "scans" that had been sent.
28. On or around November 13, 2018, Plaintiff finally received the actual copy of his credit report, from February of 2017, as it was when it was sent to Cabelas Bank. That report is exhibit J
29. Exhibit J. shows the four false statements had been thought up by, edited by and published on the Plaintiffs' credit report by Equifax, prior to selling the credit report to Cabelas. This was the first time the Plaintiff understood how Cabelas came up with their decision of adverse action.
30. All of the Plaintiffs' attempts to obtain his own credit report were denied by Equifax, and in the process, Equifax misrepresented the facts in every letter and communication, and obtained all the documents (of exhibit G) by Fraud. And then lost all the documents in plaintext form, with no encryption or protection at all, which is a violation of 15USC 1681 (Gramm-Leech-Bliley Act), and The Safeguards Rule, in the Breach of 2017.

### How the Selena Brown vs Equifax Case Is Viewed By Plaintiff, and its' Relation to this Case;

Case #1;09-cv-0168, (Jan.22,2009) N.D. of GA, In this case Ms. Brown began receiving threats and delinquency notices in the mail about loans that were not actually hers. She immediately contacted the three credit bureaus, and asked for her report. Experian and Trans Union responded, Equifax refused. After months of investigation, Ms. Brown tracked down these many fraudulent loans, and they all tracked back to a lady named Tonya Leech, who was employed at Equifax. Ms. Leech was an Identity Thief, who had worked at Equifax for some time, and was using her access to credit reports to obtain fraudulent loans. Equifax hid all of this from Ms. Brown, and never once helped Ms. Brown uncover any of the facts as to all of the fraudulent loans. Tonya Leech was not the ladies real name, as far as anyone knows, no-one knows her real name, because Equifax failed to prosecute, or even help with it.
Equifax hid all from Ms. Brown, all in an effort to prevent bad publicity, which would have possibly led to lower stock prices. And with lower stock values, the C.E.O. and Board of Directors at Equifax, could not obtain as much profit as they would like.

It is not hard to see how Equifax could have lost all the passwords and codes for the Breach to have occurred, they actually hire identity thieves to work there.

When the Plaintiff was given the "security questions" in June of 2015, the Plaintiff had to assume that Equifax was again hiding fraudulent activity, and the subsequent refusals to send the Plaintiff his own credit report were identical to the Brown case. Equifax has destroyed the June-July of 2015 reports, and the Plaintiff will never know what scheme they were pulling then. It is obvious now, that Equifax forged the "frozen database scan" of February 2017, and deleted the four false statements to hide them from the Plaintiff. Equifax tried everything to prevent the Plaintiff from obtaining exhibit J.

### Plaintiffs' Claim of Who is Responsible for Theft of Personal Property;

Equifax claims they are not responsible for allowing the theft of credit files and personal identification documents involved in disputes. Equifax had no right to the Plaintiffs property, and no right to sell or attempt to sell the Plaintiffs' property. Plaintiffs' Birth Certificate Information, Driver License, Social Security Card and Pilot License, are all property of the Plaintiff, not Equifax. Equifax should have shredded all. Equifax has no more right to sell this material than a thief would have taking a bicycle from some-ones garage and selling it. If that bicycle were resting at a city park (of public domain), it is still theft for someone to take it from that park and sell it. If that party steals the bicycle from the park, and then someone steals the bicycle from them, both thieves are responsible and accountable. Equifax obtained the Plaintiffs' property thru Fraud by Misrepresenting the Truth, they are responsible if what they have stolen from the Plaintiff, gets stolen from them.

### Amount of Information Lost by Equifax in Breach of 2017;

The C.E.O. of Equifax in 2017, Mr. Smith, testified before Congress that 145 million citizens credit files were lost, as well as the personal unencrypted identity documents of 180 thousand citizens involved in **disputes**. At just an average of 5 pages per credit report, that amounts to 720 million pages of personal identity information, the most personal, all needed to ruin some-ones life forever. 720 million pages of personal information stacked up, would reach 56 miles skyward. An aircraft cannot fly higher than 12 miles. It would take a space-ship to go any higher. Just to make one photocopy of each page. At 5 pages a minute, every minute of every day, 364 days a year, would take 274 years to complete. This is all personal data, belonging to each citizen, not to Equifax. It is more unfortunate that the information was stolen in digital format, it can be stored anywhere, duplicated instantly, and sent instantly all over the world, to fellow crooks, and never recovered. Equifax greed overcame their responsibility and duty to protect this information, even after being warned repeatedly, it would have cost a few extra cents to add protection to each file, that money was used instead to increase the bonuses of the greedy board members at the top of Equifax. There is no going back to recover this information.

### Plaintiffs' History With Equifax;

In April of 2017,(prior to Breach), Plaintiff filed a lawsuit vs Equifax for multiple violations of the FCRA. After the Breach was realized, the Plaintiff amended Complaint, with violations of Safeguards Rule, 15USC 1681-Gramm-Leech-Bliley Act, and Privacy Act violations. That case is #3;17-cv-00251-DJH-CHL. In July of 2018, at motion of Equifax, Judge issued a partial dismissal (Document 79), removing the Safeguards Rule and GLB Act, as not enforceable by the citizen Plaintiff. Left were violations of 15USC 1681g and 1681i. The Plaintiff tried to amend with the claims of Fraud, after obtaining a piece of intrinsic evidence by subpoena in November of 2018. The Court denied entry of anymore amendments as the deadline for amending had passed. At no time did the Court ever adjudicate, discuss or dismiss any claims of Fraud. Plaintiff files a separate Complaint concerning the Fraud claims.

## PLAINTIFFS' RIGHT TO BE LEFT ALONE

Justice Brandeis once was quoted, "One of the most cherished rights is the right to be left alone".

Equifax cannot leave anyone alone. Equifax has created the need for their own existence by accumulating so much personal information, and **misinformation**, on citizens, that one has to contend with them just in order to unravel all the problems they have created. Then, of course, they want to charge a fee for such situations

In the 1970's and 1980's it was very common to obtain a credit line or loan, without any check of any credit bureau. Then, and still today, Case-International farm machinery refuses to use credit bureaus for the reason they are wrong 50% of the time, and all such mistakes did was make a farmer who was in good standing, mad and he moved down the road to the next dealer. And these purchases are for 100's of thousands of dollars.

Now one cannot talk to a bank or creditor without **Equifax interfering or have already interfered,** with some **misinformation**, that of course one has to pay for, and then one has to pay again to try to straighten out.

Equifax has been instructed by the FCRA and Safeguards Rules, to secure and protect files, maintain updated files, and make corrections to files when "disputes" arise, and to send a copy of a credit report to anyone who requests their own file. To do so would cost poor little Equifax money, for each of their 800 million names on file, it might cost **ten cents** each to secure and protect the file, ten cents to update the file, ten cents to correct any disputes, and ten cents to actually send someone a copy of their requested credit report. Forty-cents x 800 million is 320 million dollars, 320 million that Equifax is not about to spend on any such operation. That money goes to the Board of Directors and the C.E.O. for bonuses for doing so well, (Cybersecurity Test failure, Breach, ect.) And the balance goes to pay the attorneys' fees, so they can defend Equifax from all the complaints caused by not spending the funds on the required by law expenditures. And let the victims deal with the damages.

**Mr. Smith, C.E.O. at the time, received 90 million dollars** in 2017, that amounts to 69 cents for each of the 145 million Breach victims.

The Plaintiff was tricked by Equifax, before the Breach was known, into providing a copy "for proof of identification" of his Drivers' License, Social Security Card, Pilot License, and might as well been Birth Certificate (all the information to obtain one has been obtained). And then rather than shred or destroy these, they store them in plaintext and they sell them, when they are not losing them to hackers and in-house identity thieves.

Equifax serves no purpose in life, except to make money off destroying others. While the Plaintiff and 300 million other Americans mind their own business every day, Equifax goes about selling personal information and **misinformation** , to robo-callers, magazine publishers, advertisers, cheats , thieves and scoundrels, **anyone who will pay the fee**.

It is high time that Equifax start paying for the damages and trouble they cause. The Plaintiffs' Drivers' License, Social Security Card, Pilot Licerse and Birth Certificate, are **NOT FOR SALE**, and Equifax better get that thru their greed-minded head.

Interesting to note, Equifax had the funds to pay extra to protect the credit files of their C.E.O and Board of Directors, as well as the attorneys at King and Spalding, Plaintiff supposes the "funds ran out" when it came to rest of us.

### Fraud in selling untruthful credit report to Cabelas Bank

Plaintiff applied for a credit card from Cabelas World Bank, around February 19, 2017. Cabelas Bank relies on Equifax to sell them a true and accurate credit report, so they can make a business decision based on that report. Equifax makes no attempt to verify any information on any credit report, as long as the information is negative towards the consumer involved. Equifax made no attempt to verify the Plaintiffs report, in fact to make sure it was a negative report, Equifax added four false statements, those four statements were not only knowingly untrue, but were designed to cause a denial of credit to the Plaintiff.

On or around the 29th of February 2017, the Plaintiff received a letter from Cabelas Bank, which stated Cabelas was denying a credit line to the Plaintiff based on information they obtained from Equifax. That letter is exhibit F. That letter shows the four false statements that lead to the denial. Those are; 1).*39- Serious delinquency. 2).*19-Too few accounts currently paid as agreed. 3).*09-Too many accounts recently opened. 4).10-Bal/Credit limit too high on revolving accounts.

The Plaintiff was not allowed to obtain a copy of this February credit report until November 13, 2018, when a subpoena was honored by the Bank and a copy of that report arrived under "declaration" and thus is admissible under Rules of Evidence. That report is exhibit J, That report shows it was Equifax that thought up and published the four false statements and added them to the Plaintiffs' report. There was no viable, legal, moral, ethical, or practical reason for any of those four statements to have been placed on the Plaintiffs' credit report.

That very report, exhibit J, shows the creditors' remarks and data from each creditor, and 1). there are no delinquencies on any account. 2). The Plaintiff had one open account, a U.S. Bank Visa, and it had no late payments, and was paid as agreed. 3). The U.S. Bank Visa was the only account opened by the Plaintiff in the previous ten years, and Plaintiff had not applied for any loan or credit for previous ten years. 4). The Plaintiff had a balance of $1,200.00 on his U.S. Bank Visa, with a credit limit of $3,000.00. and that was Plaintiff only account.

In February of 2017, after reading the letter exhibit F, the Plaintiff needed a copy of his report in order to find out what was causing all this mess. Plaintiff received a letter from Equifax, exhibit P , in May of 2017, explaining how the Plaintiff could obtain a copy of his February 2017 credit report. That letter, exhibit P, was addressed to, and sent to P.O. Box 66 Fisherville, Ky. 40023, the address of the Plaintiff.

Plaintiff responded with request letter exhibit Q, Plaintiff received a reply letter from Equifax, exhibit R, in which they claim that need further proof that P.O. Box 66 is the Plaintiffs' address. Letter exhibit R, is a fraud and a lie. Plaintiff sent a second request for his February 2017 report and that is exhibit U, Plaintiff got no reply. Plaintiff sought his February 2017 credit report during Discovery phase and was denied a copy, instead, Equifax sent the Plaintiff a "frozen database scan" of the February 2017 report, supposedly a miniaturized version of that report, that copy has the four false statements deleted. Plaintiff sought a copy of the February 2017 report in "Request for Documents", Equifax failed to respond. Plaintiff sought a subpoena from the Clerk of the Court, and as pro se, should have been given one, but was not, Plaintiff had to seek an Order to obtain a subpoena, and finally on November 13, 2018, the Plaintiff was given a copy of his own credit report as it read on February 19, 2017, exhibit J.

Equifax deliberately and maliciously and intentionally added those four false statements to the credit report of the Plaintiff, and knowingly sold a false and fraudulent report to Cabelas Bank, who was relying on Equifax to send them the truth. Equifax then made every effort they could to prevent the Plaintiff from viewing his own credit report, which was used in the denial of credit on February 19, 2017.

Not only was Cabelas Bank harmed in that they lost a customer, and profit thereof, but the Plaintiff was harmed in that he did not receive a credit account he wanted, and needed at the time.  And it is not the right of Equifax to interfere with the Plaintiffs plans, or whom he chooses to do business with.

Equifax made a profit off selling this fraudulent report, and their intention was to cause the Plaintiff a denial, and hope the Plaintiff continued to apply for credit at additional creditors, and each time, Equifax collects its' greedy fee for the report, no matter if the credit report is true or false.  This scheme is repeated over and over at car lots across the nation, as Equifax supplies false negative reports and credit is denied to a buyer, the buyer is pushed to the next Bank in line and the interest rate goes up each time.  Equifax makes its' greedy fee each time, selling the same rotten, inaccurate, false report.  Equifax does not care about the damage, the added interest rates, and costs therein.

Plaintiff cites; Keeneland Assoc. Inc.  vs  Eamer 830 F sup. 974 993 (E.D. Ky 1993) " Kentucky is one state that does not require strict privacy between defendant and the ultimately defrauded party". Plaintiff cites Highland Motor transfer vs Heyburn Build.  35 S.W. 2d 521 (Ky 1931) " Right to recover for deceit should not be restricted to immediate parties to the contract, if a third party is injured by the deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place".  Id at 523-4  "This seems to allow recovery for any injury flowing from the original fraud".

Plaintiff was injured by the original fraud planned and executed by Equifax, and this Fraud is by internet transfer of documents, and is thus Wire Fraud.

Equifax sold for profit a fraudulent document, with no concern over the damage to anyone.  And this document, exhibit J, contained statements Equifax knew where false, and were deliberately placed on the credit report of the Plaintiffs' for the purpose of causing damage.  Equifax made no effort to verify any information as to its' truth, yet they sold the document to Cabelas as if it were the truth. By definition, this is Fraud by Misrepresentation.

Equifax wants it both ways, they want to sell any report they can, as many times as they can, no matter as to its' truth.  They claim when they sell it, it is the truth, knowing it is not true, then when proven to be liars, they claim they did not know it was false.

Equifax tried best they could to hide the Plaintiffs' credit report of February 2017, even though every law concerning the Plaintiffs right to see it, was violated in the process.

On reading the letter from Cabelas dated February 19, 2017, the Plaintiff originally thought Cabelas had made the four statements based on information they obtained in the Plaintiffs' credit report, and the Plaintiff knew that information was false and inaccurate, but the Plaintiff needed to see the report to determine what was going on.  Once the credit report was given to the Plaintiff, by subpoena fulfillment, the Plaintiff realized it was Equifax that had thought up, planned and published the four false statements.

## Fraud on the Court

The Plaintiff filed a Complaint on April 21, 2017 vs. Equifax and Smith, the summons was served on May 5th, 2017. At the time of receiving summons Equifax is required to keep possession of any document involved in the Complaint, according to Federal Rules of Evidence. On May 5, 2017, Equifax knew or should have known to hold the Plaintiffs credit reports for February, March and April of 2017. Equifax was obligated to do so due to the fact the February 2017 report was used in a credit application, and must be held 60 days to provide for a dispute. That dispute occurred in April 2017 by the Social Security Administration filing notice to Equifax to correct and delete any reference to any S.S. account in the name of the Plaintiff, as no such information should have been on file. That dispute is proven by letter exhibit L, a letter from S.S. to the Plaintiff stating the dispute had been made notice to Equifax. 60 days had not expired from the original inquiry date of February 19, 2017, Once a dispute is opened that report must be held again for 60 days. Equifax knew or should have known to hold the Plaintiffs credit report as it read for Cabelas on February 19, 2017, and held the March and April reports also, the April 2017 report is an absolute, it should have been held as it read when S.S. opened their dispute.

On August 31, 2017, Court held a Rule 16 Conference, and on the Order following that meeting, Equifax was instructed to provide the Plaintiff with three credit reports (page 3 para. 11 of Order), those reports were July 2015, February 2017, and April 2017. Equifax had already failed to provide the Plaintiff his June and July 2015 reports, in violation of 1681g(a) and 1981i(disputes), AND **DESTROYED** THOSE BEFORE Plaintiff ever saw them, and Equifax had failed to provide the Plaintiff a copy of the February 2017 credit report several times, (see exhibit P,Q,R,and U). Equifax should have provided the Plaintiff with the February and April of 2017 reports, as they should have still been on hand at time of serving of summons.

In late November, 2017, after three months of hearing nothing from Equifax concerning the three reports, Plaintiff contacted Equifax and was told they did not have the three reports, but they would provide the "frozen database scans" for each of the three months. The Plaintiff received 3 such "scans", one for July 2015 (exhibit E3) one for April 2017 (exhibit E2), and the one for February 2017 (exhibit E). Of the three, one is a proven **forgery** and a fraud, that being exhibit E, comparing exhibit E to exhibit J, which is the actual February report obtained under subpoena, one can see the "scan" has the four false and negative remarks deleted. This was designed to impede justice, deceive the Court, and the Plaintiff. Without a copy of the February report, virtually all of the Plaintiffs claims were impossible to prosecute, Equifax believed the Plaintiff would never see that February report, and did everything in their power to prevent the Plaintiff from obtaining that report, (see exhibits P,Q,R, and U).

One third of the "scans" are known frauds, the Court nor the Plaintiff have any other documents to compare the other two "scans" with, those have been destroyed by Equifax.

**Spoilage** of, and **tampering** with, evidence, is supposed to be a serious violation, as well as a sign of the lack of ethics and morals, it is no surprise to the Plaintiff.

## Mr. Mark Begor, as Defendant

Mr. Begor, the current C.E.O. of Equifax, took that position knowing full-well the involvement of Equifax in the Breach of 2017, and the problems with the loss of "dispute portal" documents. He is paid to make the decisions that lead directly to these situations continuing or doing something to resolve the problems and prevent such problems in the future. He is also the decision maker concerning resolving the problems he signed on to oversee. He has chosen to not resolve any issues, and that is his choice, it is the Plaintiffs right to challenge the one in charge of Equifax. Mr Begor spoke before Congress, on February 26, 2019, as the head of Equifax, and he himself refused to give to the public his D.O.B, address, and Social Security number, for fear that it would cause him harm in the future. Well, Mr Begor, welcome to the world that Equifax has created for the rest of us.

## PLAINTIFFS' STATEMENT IN SUPPORT OF FRAUD ON THE COURT CLAIMS AGAINST EQUIFAX

### PLAINTIFFS REFERENCE FOR CLAIM

**forgery** (noun) 1) The making of a thing in fraudulent imitation of something else; esp. the forgery of a document. b) something that has been forged or counterfeited ; esp. a forged document. c) the fact of being forged. 2) Orig. deception, a deceit; later. Fictitious invention.
**forge** (verb) 2) Make (something in fraudulent imitation of something else; imitate fraudulently, counterfeit) esp. a document, signature, banknote, **in order to pass the fraudulent imitation off as genuine**. 3) Fabricate, invent.

Ref; Shorter Oxford English Dictionary, Fifth Edition Volume 1, published 2002, page 1012

### PLAINTIFFS' CLAIM

Exhibits E, E2 and E3, all obtained from defendant Equifax LLC, are **Forgeries**, and Frauds.

### ADDENDUM TO COMPLAINT;

### ANOTHER VIOLATION OF THE FAIR CREDIT REPORTING ACT, WHICH OCCURRED AFTER COMPLAINT WAS WRITTEN BT PLAINTIFF;

On April 26, 2019 the Plaintiff was made aware of the misuse of his identity by thieves, who had, thru a fraudulent Wells Fargo account, stolen funds ( $5,200.00) from the Plaintiffs USBank Mastercard. After trying to investigate, Plaintiff contacted Wells Fargo and USBank, as well as the Federal Trade Commission to report criminal activity, and identity theft. Plaintiff contacted Equifax on May 10, 2019 to obtain a **"fraud alert"** and have such an alert issued on his credit report. This effort was made under **15USC 1681c-1**, and a copy of Plaintiffs credit report was requested under **15USC 1681c-1(a)(2).** Equifax refused to issue the fraud alert and refused to release a copy of the Plaintiffs' credit report.

**15 USC1681c-1 is very clear, in stating that the Plaintiff has a right to have a "fraud Alert" issued immediately upon notice, and that the Plaintiff has the right to obtain a copy of his credit report immediately**. As is always the case, Equifax chose to ignore the law, and failed to respond.

It is very clear to the Plaintiff, and should be to the Court by now, that as predicted in his previous Complaints, the loss of **plaintext** copies of his drivers license, pilot license, social security card, and all other identity documents, would lead to the Plaintiffs' identity being stolen. It has occurred, and there is no reason to believe this type theft will not continue forever.

Equifax not only **sells those plaintext documents** for profit, they **lost** all of them in the Breach of 2017, all was done in direct violation of the FCRA and "Safeguards Rule".

The Plaintiff is waiting for the criminal investigation to be completed, This Plaintiff will not share any of this information concerning the investigation, with Equifax or any of its' representatives, Equifax simply feeds this information to the identity thieves.

There is no reason for Equifax to obey the FCRA, Safeguards Rule, or any other law, no-one is enforcing any of the laws that protect the citizens from Equifax. The Federal Trade Commission declared a settlement with Equifax concerning the Breach of 2017, 600 million dollars, divide that by 145 million victims and you have a four-dollar settlement for damages, That is after one files the proper paperwork with **EQUIFAX, and EQUIFAX 'approves"** such a claim.

Plaintiff adds a clear violation of 15USC 1681c-1, to this Complaint, which adds further damages the Plaintiff, and the Plaintiff sees no end to the damages.


Respectfully submitted,

*/s/ Joseph Hicks*
Joseph Hicks, Plaintiff, pro se

## DAMAGES;

### For Fraud by Misrepresentation in Obtaining Plaintiffs'' Personal Identity Documents;

Plaintiff has listened to Equifax blather about how there is no harm or injury to the Plaintiff by losing all of the identity documents concerned.

On February 26, 2019 the new C.E.O. of Equifax, Mr. Mark Begor, was interviewed by Congresswoman Katie Porter of CA., Ms. Porter asked Mr. Begor to publicly announce his address, date of birth, and his social security number, for everyone to hear, Mr. Begor refused, stating that doing so would cause harm to him in the future. Ms. Porter went on to ask why Equifax attorneys were claiming in Courts across the country that there was no harm by losing all the data in the Breach of 2017. Mr. Begor had no answer why.

Just recently, In the Northern District of Georgia, Case #1;17;md 2800 TWT, Chief Judge Thomas Thrash issued an opinion, that there was indeed injury and harm by the massive amount of personal data lost in the Breach of 2017. And that Equifax had ignored all warnings. And that "standing" can be based on substantial risk that harm will appear in the future.

Common sense would say the same, losing personal identity information and documents of an individual would place them at substantial risk of harm in the future. This is especially true when that information is obtained by fraud in the first place and would not have been on record had the fraud not occurred. The FCRA and its' subsections meant nothing to Equifax, or none of this would have occurred.

Equifax violated the Gramm-Leech-Bliley Act, and the Safeguards Rule 16CFR 314, in not protecting the information they had on file, and not shredding and destroying what they should have. Further, Equifax scored a zero on their cybersecurity test in 2016, and ignored the problem, but went on to increase the pay and stock-options of the Board of Directors and C.E.O.

Now that Equifax attorneys cannot use their "no-harm" blather, they will most likely claim stupidity and laziness of employees for the problems, however when one basis all their decisions on greed, laziness and stupidity are not an excuse.

Equifax has lost all the Plaintiffs' information in a plain-text form, it's gone for good, forever. Equifax spent a whopping 8 cents on security of each citizen.

In Wilson vs Henry 340 S.W. 2d 449 451 (Ky. 1960) "The very essence of actionable fraud or deceit is the belief in and reliance on statements of the party who seeks to perpetuate the fraud". In Snyder vs Rhinehart 118 S.W. 2d 543 547 (Ky. 1938) "Before a party can be defrauded the perpetrator of fraud must make false statements and representations which the other party believed an acted upon". The Plaintiffs' documents were obtained by Equifax prior to the knowledge of any Breach, and no document would have been released by the Plaintiff to these greedy carpetbaggers, had they ever once told the truth to the Plaintiff. In Chamberlain vs National Life and Accident, Ky. 256 548 76 S.W. 2d 628-631 (1934)"Fraud may be committed by either intentionally asserting false information or by willfully failing to disclose the truth". Equifax never once told the truth. In Kellerman vs Dedman 411 S.W. 2d 315 (Ky. 1967) "In an action of fraud it is not necessary to prove the amount of damages with certainty, but only to establish with certainty the existence of damages, it is for a jury to decide afterward". Plaintiff cites for reference; Lewis v Bledsoe Surface Mining Ky. 798 S.W. 2cl 459 (1990). Grant vs Wrona Ky. App., 662 S.W. 2d 227 229 (1983), and Johnson vs Cormey Ky. App. 596S.W. 2d 23 27 (1979) and Fleg;es vs Truserve Corp. 289 S.W. 3d 544 549 (Ky. 2009).

Plaintiff maintains that the loss of the seven documents along with all the other information lost by Equifax, is in fact limitless damage, Theft of funds, tax refunds, identity theft and the forgery of the Plaintiffs driver license, pilot license, can go on forever, and appear and reappear anytime in the future., and simply be left at the scene of any crime in the future. There is substantial risk in the future of harm all caused by Equifax, and worry, stress, mental distress are all a result of the actions of Equifax.

## DAMAGES;

### Fraud in selling untruthful credit report to Cabelas Bank

Plaintiff claims damages for being denied a line of credit that should have been approved, had Equifax not thought up, and published the four false statements on the Plaintiffs' February 2017 credit report. The Plaintiff needed and wanted that Cabelas account, and it should have been up to Cabelas to decide using truthful information. Not only did Equifax perpetuate fraud, they ruined the reputation of the Plaintiff in the eyes of Cabelas, moreover that letter of denial, exhibit F, in now in the hands of the new owner of Cabelas credit card division, and that is Capital One Bank, one of the largest banks in the country.

1). Intent. 2). A scheme or artifice to defraud or obtaining property by fraud. 3). A Mail or Wire communication, Those are the components of Wire Fraud and Mail Fraud.

It is not cute or clever, to falsify a document during Court Ordered Discovery, if one examines exhibit J, the actual credit report used by Cabelas for their issuance of denial letter, and compare that to exhibit E, the supposed "frozen database scan" of the Plaintiffs same February 2017 credit report, one sees the four statements have been deleted, this document is a forgery after the fact, designed to hide the facts from the Plaintiff. When one is denied credit, or has an adverse action by a creditor, all of the FCRA Laws are in favor of the Plaintiff being allowed to view a copy of any such report used in such a manner. Equifax continually refused to supply the Plaintiff with a copy of said report.

In his February 26, 2019 testimony to Congress, new Equifax C.E.O. Mark Begor, stated that Equifax sells 6 million credit reports a week, it is standard knowledge that at a minimum, 20% of reports are incorrect, that amounts to 1.2 million false reports a week sold by Equifax, just as they did not refund Cabelas fee in Plaintiffs' case, they do not refund any of the 1.2 million fees, it's all fraud.

Plaintiff cites; Graham v John R. Watts and Son 36 S.W. 2d 859 (Ky. 1931) where a third party was allowed to seek damages from a fraud involving two other parties. Plaintiff states Kentucky law does not require strict privity in these matters.

Plaintiff maintains he has suffered harm and injury, stress worry, and mental distress, during the past four years of trying to deal with Equifax, all of its' hoaxes and charades, and on top of it all they lacked the security to protect all of the Plaintiffs information, simply because of pure greed. The only reason Equifax is upset at all about the Breach of 2017, is they missed a chance to sell the 145,000.000 credit reports for their greedy fee. And 20% (at least) of the stolen reports are false, and their still upset, they would have sold them regardless.

There is never a "mistake" by Equifax, in which they improve some-ones credit situation, it is always a negative situation, that makes them more money.

Plaintiff had an opportunity while he was healthy and working steady to obtain a second credit card for emergencies, or for whatever the Plaintiffs' reasons. It is not the place of Equifax to interfere with whom the Plaintiff does business, Plaintiff does not have to seek the "approval" of Equifax for anything. Equifax really needs to stay out of the Plaintiffs' life altogether.

Equifax has foiled the last couple of years with all their non-sense excuses, frauds and lack of ethics. Plaintiff seeks damages for all the troubles Equifax has brought about, all totally unnecessary.

## DEMAND FOR RELIEF;

**For Fraud in preparing and selling a knowingly false credit report;**

Plaintiff seeks Actual, General, and Presumed Damages of $250,000.00

Plaintiff seeks Punitive Damages of $1,000,000.00

**For Fraud in obtaining identity documents belonging to the Plaintiff;**

Plaintiff seeks Actual, General, and Presumed Damages of $1,000,000.00

Plaintiffs seeks Punitive Damages of $4,000,000.00

**For Fraud on the Court;**

Plaintiff seeks Damages in Actual Costs of preparation and filing of previous case #3;17-00251, and all costs involved in attempted prosecution of that case; Plaintiff seeks $60,000.00

**For Legal Costs and Fees for Plaintiffs time and effort in this Complaint,;**

Plaintiff seeks $35,000.00

Respectfully Submitted,

*/s/ Joseph Hicks/*
Joseph Hicks, Plaintiff pro se

**PLAINTIFFS DEMAND FOR RELIEF** ; **PERMANENT INJUCNTION;** ORDERING EQUIFAX TO DELETE ALL FILES and RFEFERENCES, WRITTEN and DIGITAL, CONCERNING ANY INFORMATION INVOLVING THE PLAINTIFF, and to NEVER IN THE FUTURE OBTAIN< GATHER OR MAINTAIN ANY FILE, OR SELL OR DISTRIBUTE ANY INFORMATION CONCERNING THE PLAINTIFF., IN ANY FORM.

Respectfully submitted,

Joseph Hicks, Plaintiff pro se

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Plaintiff; Hicks          vs          Defendants; Begor, Equifax

**ORDER**

It is hereby **ORDERED**, Equifax Information Services, LLC, and any or all its' subsidiaries, and personnel, shall delete, and destroy all files and information, digital and written, concerning Plaintiff Joseph Hicks, And shall never again obtain or hold any file or bit of information concerning the Plaintiff, and never again transact any sale of, or dissemination of, any information concerning the Plaintiff.

Date; _____, 20\_\_\_.

_____
JUDGE, UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF KENTUCKY